UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
                           :

THE TRUSTEES OF THE MASONIC HALL     :
AND ASYLUM FUND,                     :
                           :
               Plaintiff,     :
   -against-                  :          08 Civ. 10495 (GEL)
                           :

PRICEWATERHOUSECOOPERS LLP,     :
                           :
             Defendant.   :
                           :
-----------------------------------------------------------x      **OPINION AND ORDER**
                           :

INDEX RECOVERY COMPANY, LP      :
f/k/a SPHINX MANAGED FUTURES FUND  :
INDEX FUND, LP,                 :
             Plaintiff,     :
                           :
   -against-                  :          08 Civ. 10494 (GEL)
                           :

PRICEWATERHOUSECOOPERS LLP,     :
                           :
             Defendant.   :
                           :
-----------------------------------------------------------x

Brian J. Butler, Jonathan B. Fellows, Clifford G.
Tsan, Bond, Schoeneck & King, PLLC, Syracuse,
New York, for the Plaintiffs Index Recovery
Company and The Trustees of the Masonic Hall and
Asylum Fund.

James J. Capra, Orrick, Herrington & Sutcliffe LLP,
New York, New York, Daniel B. Berman, Hancock
& Estabrook, LLP, Syracuse, New York, for
Defendant Pricewaterhousecoopers LLP.

GERARD E. LYNCH, <u>District Judge</u>:

Plaintiffs, the Trustees of the Masonic Hall and Asylum Fund ("Trustees") and the Index Recovery Company, LP f/k/a SPhinX Managed Futures Index Fund, LP ("Index Recovery") (collectively, the "Index Recovery Plaintiffs"),[1] initially brought independent actions for negligence and professional malpractice in the Supreme Court of the State of New York, County of Oneida (the "New York State Court").[2]  The actions, filed approximately twelve months apart, contain substantially similar allegations, namely that the audits performed by Pricewaterhousecoopers LLP ("PwC") failed to disclose that the Index Fund's assets – which included the assets of the Trustees – were improperly diverted into unprotected, non-regulated accounts at Refco Capital Markets, Ltd. ("RCM"), exposing those assets to the risk – and in October 2005 the reality – of RCM's insolvency.  The Index Recovery Plaintiffs now move this Court to abstain from asserting jurisdiction and to remand these actions to the New York State Court.  In addition, the Trustees seek a remand to the New York State Court on the basis that PwC's removal of the Trustees' action more than a year after the action was filed was untimely, and that accordingly, they are entitled to costs, expenses, and fees pursuant to 28 U.S.C. § 1447(c).  For the reasons set forth below, the motions will be denied.

---

[1] The Index Recovery Plaintiffs submitted one joint brief in support of its motions. Where the discussion requires drawing a distinction between the two actions, the plaintiffs will be identified as the "Trustees"or as "Index Recovery."

[2] The Trustees bring two causes of action against PwC, negligence and professional malpractice.  (Trustees' Compl. ¶¶ 46, 55.)  Index Recovery brings three causes of action – professional malpractice, fraud, and negligent misrepresentation.  (Index Recovery's Compl. ¶¶ 105, 118, 135.)

## BACKGROUND

The facts set forth below are those alleged in the complaints filed by the Trustees and Index Recovery in the New York State Court.[3]  The allegations are assumed to be true for purposes of this motion.  See Merritt v. Shuttle, Inc., 245 F.3d 182, 186 (2d Cir. 2001).

## I.      Events Leading up to the Bankruptcy of the Index Fund

The Trustees constitute the governing board of the Masonic Hall and Asylum Fund (the "Masonic Hall and Home"), a not-for-profit corporation formed by an act of the New York State Legislature and located in Oneida County.  (Trustees' Compl. ¶ 1.)  In May 2004, the Masonic Hall and Home entered into a Subscription Agreement for the purchase of limited partnership interests in the SPhinX Managed Futures Index Fund, LP ("Index Fund"), the post-bankruptcy shell of which is the Index Recovery Company, LP.  (Id. ¶ 5).  The Trustees initially invested $12,750,000 in the Index Fund and several months later, in September 2004, made an additional investment of $17,850,000.  (Id.)

The Index Fund debuted in 2001 as one of several SPhinX Funds.  The SPhinX Funds were a platform of funds organized as Cayman Islands Exempted Segregated Portfolio Companies ("SPCs") and designed to track the performance of the Standard & Poor's Hedge Fund Index.[4]  (Index Recovery's Compl. ¶¶ 4, 6, 47.)  The purpose of the SPCs was to preserve and protect assets invested in any one portfolio from cross-liability in the event of the insolvency

---

[3] References to the Trustees' Complaint are to the Complaint filed in the New York State Court on October 24, 2007.  References to Index Recovery's Complaint are to the Complaint filed in the New York State Court on May 23, 2008.

[4] The name "SPhinX" is derived from the "S&P Hedge Fund Index."  The SPhinX Funds were designed to achieve returns consistent with the performance of that index.

3

of other segregated portfolios or of the custodian or prime broker.  (Id. ¶ 8.)  Retaining customer-segregated assets in SPCs was essential to the structure of the SPhinX funds.  (Id. ¶ 15.)

The purpose of the Index Fund was to issue subscriptions to qualified investors and then allocate substantially all of its assets, via the SPhinX Managed Futures LP, to the SPhinX Managed Futures Fund SPC ("SMFF").  (Id. ¶¶ 7, 10.)  The Index Fund, however, had no employees of its own.  (Id. ¶ 11.)  Rather, Refco Securities, LLC ("Refco LLC") offered the limited partnership interests in the Index Fund (id. ¶ 6), and those interests were subsequently managed by Refco Alternative Investments, LLC ("RAI"), the prime broker for many of the SPhinX Funds, including SMFF and the Index Fund (id. ¶ 11).

On RAI's watch, however, and despite the fact that according to the SPC structure assets of each segregated portfolio were to be held separately from every other segregated portfolio, assets from SMFF were swept on a regular basis from their proper customer-segregated accounts at Refco LLC into accounts of an unregulated offshore Refco affiliate, RCM, where the assets were co-mingled with assets belonging to RCM and to other RCM customers.  (Id. ¶¶ 16-20.)

When, on October 10, 2005, Refco Inc., the parent company of RAI and an affiliate of Refco LLC, announced that it had "discovered" a $430 million receivable owed to it by an entity controlled by Refco's CEO Phillip R. Bennett, RCM held approximately $312 million of SMFF's cash, including approximately $40 million in assets from the Index Fund, $30.6 million of which belonged to the Trustees.[5]  (Index Recovery's Compl. ¶¶ 11, 14, 23, 30; Trustees'

---

[5] According to the Schedule of Creditors filed by Index Recovery, Masonic Hall and Home is by far the largest Index Fund creditor.  The schedule lists three Masonic Hall entities as comprising approximately 93 percent of Index Recovery's unsecured, nonpriority claims.  See Chelney Decl. Ex. D, Notice of Removal (Trustees) ¶ 8.

4

Compl. ¶ 14.)  RCM and dozens of other Refco subsidiaries and affiliates subsequently filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the Southern District of New York.  (Trustees' Compl. ¶ 22).  Ultimately, the Index Fund – like the other SPhinX entities[6] – also filed for bankruptcy.  See In re Index Recovery Co., LP, No. 07-63680 (jointly administered with No. 07-63679) (Bankr. N.D.N.Y. Oct. 19, 2007) ("Index Recovery Chapter 11 Case").

## II.    PwC's Audit Services to the Index Fund

Pursuant to the Index Fund's Agreement of Limited Partnership, RAI was required to furnish each Limited Partner the audited financial statements of the Index Fund.  (Index Recovery's Compl. ¶ 38.)  The Index Fund retained PwC to perform the audit and to issue its financial statements for the fiscal years ending December 31, 2003, and December 31, 2004.  (Id. ¶¶ 35-38.)  During this time, PwC also served as outside auditor of the other SPhinX funds, including SMFF (id. ¶¶ 35-37; Trustees' Compl. ¶ 31), and was a financial consultant to the Refco entities (Index Recovery's Compl. ¶ 36.)

As auditor of the Index Fund, PwC was responsible for reviewing the Index Fund's accounting practices and providing an opinion as to whether those practices complied with generally accepted accounting principles ("GAAP").  (Trustees' Compl. ¶¶ 23-27.)  For the fiscal years ending in 2003 and 2004, PwC issued unqualified opinions that the financial

---

[6] The bankruptcy of these entities is discussed in Krys v. Sugrue, No. 08 Civ. 3086 (GEL), 2008 WL 4700920 at *2-3 (S.D.N.Y. Oct. 23, 2008).  In that action, which is still pending before this Court, the Joint Official Liquidators of various SPhinX entities, bring claims against PwC, inter alia, for (1) malpractice, negligent misrepresentation; (2) aiding and abetting fraud, breach of fiduciary duty, and conversion; and (3) fraud.  As in this matter, the Krys plaintiffs base their allegations on PwC's allegedly deficient audits of the SPhinX Funds, including SMFF, as well as PwC's provision of advisory services to Refco.

statements of the Index Fund and SMFF, for those years "present fairly, in all material respects,

the financial position" of the entity in conformity with GAAP.  (Index Recovery's Compl. ¶¶ 41,

46.)  In those audits, however, although PwC identified related party transactions between Refco

LLC, RCM, and RAI, the audits did not reveal that a substantial quantity of the Index Fund's

assets was, in fact, via SMFF, being held in non-segregated accounts at RCM.  (Id. ¶¶ 42, 44.)

Yet, from its audits of the SPhinX entities, PwC knew or should have known in the exercise of

reasonable diligence that the Index Fund's assets were being held at RCM, where the assets were

exposed to the claims of RCM's creditors in the event of insolvency.  (Id. at ¶¶ 35-45.)  PwC's

failure to disclose that SMFF had multiple deficiencies in its internal controls – controls that

should have informed Index Fund's Limited Partners that SMFF's financial statements, and by

extension the Index Fund's statements, were not in accordance with generally accepted

accounting principles (id. ¶¶ 66-68, 89,104; Trustees' Compl. ¶ 44) – led to the loss of the Index

Fund's, and the Trustees', assets.

### III.    Procedural History of the Instant Actions

The Trustees commenced their action against PwC by filing a Summons With Notice in

the Supreme Court of the State of New York for Oneida County on May 21, 2007.  The Trustees

of the Masonic Hall and Asylum Fund v. PricewaterhouseCoopers LLP, No. 2007-1353 (N.Y.

Supr. Oneida County) (See Chelney Decl. Ex. A.)  On October 24, 2007, after a demand for the

complaint by PwC, the Trustees served PwC with the Complaint in this action.  (Chelney Decl.

Ex. D, Removal Notice (Trustees) ¶ 2.)[7]  Just a few days earlier, on October 19, 2007, the Index

---

[7] On December 13, 2007, PwC moved to dismiss the Trustees' complaint alleging inter
alia, that the complaint failed to state a cause of action for professional malpractice and that the
negligence claim was duplicative of the malpractice claim.  On June 13, 2008, the state court

Fund had filed for Chapter 11 relief in the United States Bankruptcy Court for the Northern District of New York. (See Chelney Decl. Ex. D, Removal Notice (Index Recovery) ¶ 7.)  Index Recovery commenced its action against PwC on May 23, 2008.  Index Recovery Co., L.P. f/k/a SPhinX Managed Futures Index Fund, L.P. v. PricewaterhouseCoopers LLP, No. 2008-1565 (N.Y. Supr. Oneida County) (See Chelney Decl. Ex. C.)  On June 30, 2008, PwC removed both actions to the United States District Court for the Northern District of New York on the premise that the Index Recovery Chapter 11 proceeding established federal jurisdiction pursuant to 28 U.S.C. § 1334.  The Index Recovery Plaintiffs moved to remand to state court, asserting that even if the court had subject matter jurisdiction, abstention was both mandatory and warranted in the exercise of discretion under 28 U.S.C. § 1334(c).  The Trustees also sought remand on the ground that PwC's removal of the Trustees' action, more than a year after the action was filed, was untimely.

On July 1, 2008, PwC filed a Notice of Tag-Along Actions with the Judicial Panel on Multidistrict Litigation ("MDL Panel"), and the MDL Panel subsequently transferred the actions to this Court as related to the Refco MDL.  See In re Refco, Inc. Secs. Litig., No. 07 Civ. 1902.[8]  That transfer now brings both motions to remand and/or abstain before this Court.

With the exception of the Trustees' argument that PwC's remand motion is untimely, the jurisdictional issues raised in these motions – whether mandatory or discretionary abstention is warranted – are substantially similar to those previously raised by parties in other Refco-related

denied PwC's motion.  (See Butler Decl. Ex. D)

[8] The MDL Panel denied the Index Recovery Plaintiffs' motion to vacate the Conditional Transfer Order on December 3, 2008.

actions before this court.  See In re Refco, Inc. Secs. Litig., No. 07 Civ. 11604, 2008 WL

1827644 (S.D.N.Y. April 21, 2008); Kirschner v. Bennett, No. 07 Civ. 8165, 2008 WL 1990669

(S.D.N.Y. May 7, 2008); Krys v. Sugrue, No. 08 Civ. 3086, 2008 WL 4700920 (S.D.N.Y. Oct.

23, 2008).  To the extent the motions of the Index Recovery Plaintiffs seek abstention, their

motions will be denied for essentially the reasons set forth in those opinions.  For separate

reasons, set forth below, the Trustees' motion will also be denied.

## DISCUSSION

**I.      Abstention**

A party seeking to remove an action from state to federal court bears the burden of

establishing federal jurisdiction.  See In re WorldCom, Inc. Secs. Litig., 293 B.R. 308, 316

(S.D.N.Y. 2003), citing Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir. 1998).  Here, however,

the Index Recovery Plaintiffs do not dispute that these actions are sufficiently "related to" the

Index Fund's Chapter 11 bankruptcy to establish federal jurisdiction.  Rather, they contend that

whether or not subject matter jurisdiction exists, abstention is both required and warranted in the

exercise of discretion.  (Pl. Mem. 5.)  For reasons similar to those discussed in In re Refco,

Kirschner, and Krys, however, neither mandatory or discretionary abstention is appropriate.

A.      Mandatory Abstention

Section 1334(c)(2) provides, in relevant part:

> [u]pon timely motion of a party in a proceeding based upon a State
> law claim or State law cause of action, related to a case under title
> 11 but not arising under title 11 or arising in a case under title 11,
> with respect to which an action could not have been commenced in
> a court of the United States absent jurisdiction under this section,
> the district court *shall abstain* from hearing such proceeding if an
> action is commenced, and can be timely adjudicated, in a State
> forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphasis added).  A party seeking mandatory abstention under

§ 1334(c)(2) thus must demonstrate that:

> (1) the motion to abstain was timely; (2) the action is based on a
> state law claim; (3) the action is "related to" but not "arising in" a
> bankruptcy case or "arising under" the Bankruptcy Code; (4)
> Section 1334 provides the sole basis for federal jurisdiction; (5) an
> action is commenced in state court; [and] (6) that action can be
> "timely adjudicated" in state court.

In re WorldCom, 293 B.R. at 331.  Of the six factors, PwC implicitly concedes that five are met.

However, "[a] party is not entitled to mandatory abstention if it fails to prove any one of the

statutory requirements."  Id.; see Mt. McKinley Ins. Co. v. Corning Inc., 399 F.3d 436, 446-47

(2d Cir. 2005).

    As in In Re Refco, Kirschner, and Krys, mandatory abstention is not warranted here,

because the Index Recovery Plaintiffs have not demonstrated that their claims can be "timely

adjudicated" in state court.  28 U.S.C. § 1334(c)(2).  Plaintiffs' arguments to the contrary are

based on the assertion that the Court's prior opinions discussing – and denying – abstention are

"inapposite" because the "claims [here] do not involve Refco, but simply PwC's failures to

provide reliable audits of [the] Index Fund."  (Pl. Mem. 9 n.3.)   The contention that these

actions present straightforward, stand-alone claims that have nothing to do with Refco is belied

by what the Index Recovery Plaintiffs' complaints plainly allege.

    First, the complaints in both actions assert more than an isolated, deficient audit of the

Index Fund.  The Trustees' complaint details PwC's service as auditor for SMFF, and alleges

that its engagement with SMFF, together with audit work performed for "other SPhinX entities"

should have led PwC to discover that the Index Fund's assets were improperly being held at

9

RCM.  (Trustees' Compl. ¶¶ 36, 42-44.)  Index Recovery's complaint goes even farther.  That complaint alleges that, "[f]rom its auditing work of [not only the] Index Fund, [but also] other SPhinX funds, [and] its function as de facto Chief Accounting Officer for Refco, PwC knew, or . . . . should have known . . ." that the Index Fund's cash was improperly exposed.  (Index Recovery's Compl. ¶ 82.)

    These allegations do not charge conduct that, as plaintiffs contend, has "[no] questions of fact or law [that] are [] common to [the Refco MDL]."  (Pl. Supp. Mem. 6.)  To the contrary, plaintiffs' claims against PwC for its deficient auditing of the Index Fund are intertwined with PwC's allegedly deficient audits of other SPhinX and Refco entities, audits which are factually and legally pertinent to the Refco fraud.  Further, plaintiffs' claims are identical to those alleged by the SPhinX plaintiffs in Krys.  That action – brought on behalf of the SPhinX entities including SMFF – alleges that PwC aided and abetted Refco's improper co-mingling of SPhinX Funds assets in unprotected, non-regulated accounts at RCM.  In addition to the fact that both Krys and the instant actions involve PwC's audits of the financial statements of SPhinX entities, the Krys action similarly seeks to recover the total amount allegedly lost by all investors in the SPhinX SPC, including the $40 million sought by Index Recovery – $30.6 million of which are assets of the Trustees.  Accordingly, any fair reading of plaintiffs' claims against PwC results in the conclusion that they involve the same core facts, allegations, and inferences as other cases involved in the MDL, especially those actions that, like Krys, name PwC as a defendant.  The Index Recovery Plaintiffs' arguments to the contrary notwithstanding, the Index Fund, like SMFF and the remaining SPhinX funds, is simply another entity pulled under by the Refco fraud.

Nor does the fact that the state court timely denied PwC's motion to dismiss the Trustees' case (see Butler Decl. Ex. D) alter this result.  Pointing to the resolution of a single motion in state court – in which the court ascertained whether the statute of limitations had run and whether claims, on their face, were adequately pleaded (see id.) – does little to establish whether on remand, the instant actions could and would be "timely adjudicated" in the state courts within the meaning of 28 U.S.C. § 1334(c)(2).  This conclusion is especially compelled where, as in In re Refco, Kirshner and Krys, resolution of this case is "but one piece of a much larger, extremely complex litigation puzzle,"  Bondi v. Grant Thornton Int'l, 322 B.R. 44, 50 (S.D.N.Y. 2005), and thus, far from promoting timely adjudication of the plaintiffs' claims, to remand this action to the New York State Court "would simply complicate and slow down the resolution of those claims, as well as of the matters already pending before this Court."  In re Global Crossing, Ltd. Sec. Litig., 311 B.R. 345, 349 (S.D.N.Y. 2003).

Indeed, as this Court has repeatedly explained:

> [Section] 1334(c)(2) is intended to require federal courts to defer to the state courts to handle lawsuits which, although "related to" a bankruptcy, can be promptly resolved in state court without interfering with the proceedings pending in the federal courts. That intention simply has no application to litigation of this sort, in which a case properly removed to federal court is intertwined both with complex bankruptcy proceedings and equally complex securities class actions pending in federal court.

In re Refco, 2008 WL 1827644, at *12, quoting In re Global Crossing, 311 B.R. at 349; see Bondi, 322 B.R. at 50; In re WorldCom, 293 B.R. at 331.  For these reasons, mandatory abstention pursuant to § 1334(c)(2) is unwarranted.

11

B.    Discretionary Abstention/Equitable Remand

Discretionary abstention and/or equitable remand are also inappropriate.  Section

1334(c)(1) provides that "[n]othing in this section prevents a district court in the interest of

justice, or in the interest of comity with State courts or respect for State law, from abstaining

from hearing a particular proceeding . . . related to a case under title 11."  28 U.S.C.

§ 1334(c)(1).  Federal courts, however, must be "sparing" in their exercise of discretionary

abstention, Winstar Holdings, LLC v. Blackstone Group L.P., No. 07 Civ. 4634, 2007 WL

4323003, at *5 (S.D.N.Y. Dec. 10, 2007), because they possess a "virtually unflagging

obligation . . . to exercise the jurisdiction given them," Colorado River Water Conservation Dist.

v. United States, 424 U.S. 800, 817 (1976); see id. at 813 (observing that abstention is proper

only in the case of a few "extraordinary and narrow exception[s]").  Relevant considerations in

determining whether to abstain pursuant to § 1334(c)(1) include "comity and federalism, judicial

economy, and efficiency."  In re WorldCom, 293 B.R. at 332.[9]

Here, as was the case in In re Refco, Kirschner and Krys, "there is little basis to invoke

comity to the state courts, and every reason to invoke . . . federal jurisdiction."  2008 WL

1827644, at *12, quoting Winstar, 2008 WL 1990669, at *8.  Although the Index Recovery

Plaintiffs' claims are based entirely on New York state law, the claims are straightforward

common-law claims that do not involve arcane or idiosyncratic provisions of state law that

would "warrant abstention based on comity concerns."  In re Worldcom, 293 B.R. at 332; see

Rahl v. Bande, 316 B.R. 127, 135 (S.D.N.Y. 2004).  Further, given the similarly close

_____

[9] "The equitable remand analysis . . . is essentially the same as the Section 1334(c)(1)
abstention analysis."  Id. at 334.

12

connection between this pair of actions and the Refco MDL, it is "beyond cavil that judicial economy and efficiency are best served by exercising the jurisdiction that so clearly exists." In re WorldCom, 293 B.R. at 333.  Given the scores of other Refco-related cases consolidated by the MDL Panel and currently pending before this Court, and given the Court's denial of the Krys plaintiffs' virtually identical motion in Krys v. Sugrue, 2008 WL 4700920 at *10, the Index Recovery Plaintiffs have advanced no persuasive reason why a different outcome should result here.  Accordingly, the plaintiffs' request for discretionary abstention under § 1334(c)(1) must be denied.

## II.   Untimely Removal

The Trustees have separately moved to remand to state court on the ground that PwC's removal of the Trustees' action, more than a year after it was filed, was untimely.  If the Court grants the motion to remand, the Trustees further move that the Court award them the fees and costs associated with opposing the removal of this action.[10]

Section 1446(b) requires a defendant to file a notice of removal thirty days after receiving the initial pleading.[11]  Where the initial complaint "obscure[s], omit[s], or misstate[s]" the grounds for removal, however, a defendant "has thirty days from the revelation of grounds for

---

[10] This Court has discretion under 28 U.S.C. § 1447(c) to award costs and expenses, including reasonable attorney fees, incurred as a result of the improper removal. See Martin v. Franklin Capital Corp., 546 U.S. 132, 139 (2005).  The statute provides, in pertinent part, that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).

[11] The statute provides in pertinent part: "[A] notice of removal of a civil action or proceeding shall be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."  28 U.S.C. § 1446(b).

removal to file a notice of removal."  See Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 206 (2d Cir. 2001) (holding that pleading which provided incomplete address information did not allow the defendant to "intelligently ascertain" removability; the defendant was not required to research the missing address of another named defendant to discover removability) (quotation marks omitted).  A defendant need not "look beyond the initial pleading for facts giving rise to removability," id., nor "guess" whether the action is removable, Richstone v. Chubb Colonial Life Ins., 988 F. Supp. 401, 403 (S.D.N.Y. 1997) (holding that a defendant "must be able to ascertain easily the necessary facts to support his removal petition").  Rather, where the grounds for removal are not apparent on the face of the complaint, § 1446(b) allows a notice of removal to be filed "within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  In brief, the "trigger for removal occurs when the initial pleading or other paper contains unequivocal facts that alert the defendant to a claim of federal officer jurisdiction."  In re MTBE Prods. Liab. Litig., 399 F. Supp.2d 356, 365 (S.D.N.Y. 2005).

Here, the Trustees argue that PwC's removal is untimely because it was filed more than a year after the Trustees' action commenced.[12]  There is no dispute, however, that neither the Trustees' complaint nor Index Recovery's complaint identified the relevant bankruptcy proceedings, nor do the Trustees contend that PwC could have "intelligently ascertained" removability based on those or any other documents.  Nor do the Trustees challenge the good

---

[12] Index Recovery does not contest that its action was timely removed, as PwC filed its notice of removal within thirty days of Index Recovery commencing its action against PwC.

faith of PwC's averment that it removed the case within thirty days of the date on which it first learned of the Index Recovery bankruptcy.[13]  Rather, the Trustees argue that the way in which PwC independently uncovered removability – by internet search that occurred on PwC's being served with Index Recovery's complaint – cannot be an "other paper" within the meaning of § 1446(b).  (Pl. Mem. 11.)  This argument is without merit.

The nub of the Trustees' assertion is that because nothing *they* had provided to PwC mentioned that the Index Fund was in bankruptcy, PwC's discovery cannot fit within the "other paper" provision of § 1446(b).  Section 1446(b) contemplates a number of situations in which the trigger for removal is the filing or service of a litigation document by the plaintiff that discloses the facts conferring federal jurisdiction, such as a "motion" or an "amended pleading."  The Trustees would have it that by the rule of *eiusdem generis* only such a litigation document emanating from the plaintiff may constitute the "other paper" that authorizes belated removal.

The Trustees' position is deeply inconsistent with the meaning and purpose of  § 1446(b).  The essential command of the statute is that a defendant must remove the action promptly after the grounds for removal become apparent.  When the facts warranting removal are apparent on the face of the complaint, the action must be removed within thirty days after service of the complaint.  Where the complaint does not disclose those grounds, however, the defendant cannot be faulted for failing to remove immediately, although the case must still be removed promptly –

_____

[13] The Trustees do contend, however, that PwC reasonably should have learned of the bankruptcy long before it did.  While there is considerable force to the Trustees' factual assertion that PwC could easily have learned of the bankruptcy earlier had it exercised due diligence, their argument is without legal force.  It is well-settled that a defendant need not investigate removability, and that the removal period does not commence until the defendant actually receives information from which removability can be ascertained.  <u>Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.</u>, 526 U.S. 344, 352 (1999).

within thirty days – once the basis for removal is learned.  As the Fourth Circuit has observed, §

1446(b) "does not preclude defendants from removing a case where their discovery of the

grounds of federal jurisdiction is belated because facts disclosing those grounds were

inadequately or mistakenly stated in the complaint."  Lovern v. Gen. Motors Corp., 121 F.3d

160, 162 (4th Cir. 1997).

  In a case such as this one, in which the fact authorizing removal is a bankruptcy filing by

a third party, neither the complaint nor any other document filed by the plaintiff has any

occasion to mention that fact.  Under these circumstances it would make little sense to tie the

petition for removal to the complaint rather than to the filing of the bankruptcy, or to the

discovery of that filing by the defendant.  And it would make no sense at all to permit a

defendant a thirty-day window to remove when the *plaintiff* discloses the bankruptcy in a

pleading or motion, but not where the defendant learns of the bankruptcy by the exercise of its

own investigation.

  The weight of authority holds that "other paper" should be read broadly.  Contrary to the

Trustees' position, the "other paper" contemplated by § 1446(b) "is not restricted solely to

papers filed in the [instant] case."  Sunburst Bank v. Summit Acceptance Corp., 878 F. Supp 77,

81 (S.D. Miss. 1995).  Indeed courts have held that "other paper" is "a broad term and includes

any relevant information received by [d]efendants."  Chavez v. Kincaid, 15 F. Supp. 2d 1118,

1123 (D. N. M. 1998), citing Yarnevic v. Brink's, Inc., 102 F.3d 753, 755 (4th Cir. 1996).  The

bankruptcy papers filed by Index Recovery and the internet search PwC used to discover the

bankruptcy thus can constitute the "other paper."

The fact that an internet search is not a literal "paper" does not matter.  When the statute was written, paper was the primary medium of information storage and communication.  Today, litigation documents themselves are commonly filed, served, and searched electronically.  If a bankruptcy filing read in a court file is an "other paper" within the meaning of § 1446(b), so is its electronic counterpart and the internet search used to discover it.  Beasley v. Personal Finance Corp., 279 B.R. 523, 531 (S.D. Miss. 2002).

Thus, the Trustees may not dictate the timing of PwC's opportunity to remove, or deny it altogether, simply by withholding from its court filings information that would permit removal.  That PwC itself discovered the "paper" that provided it with notice of the removability of the case does not defeat the applicability of the second sentence of § 1446(b).

Only a reading of § 1446(b) wholly contrary to that advanced by the Trustees is consistent with the purpose of the removal statute, which is to encourage prompt resort to federal court when a defendant first learns of a basis for federal jurisdictional and to discourage disingenuous pleading by plaintiffs in state court to avoid removal that is otherwise proper.  Accordingly, PwC's removal of the Trustees' action was timely and the Trustees' motion to remand to the New York State Supreme Court is denied.[14]

## CONCLUSION

For the foregoing reasons, the Index Recovery Plaintiffs' motions to abstain and/or remand are denied.

---

[14] Accordingly, there is no basis for an award of costs and attorney fees under 28 U.S.C. § 1447(c).

SO ORDERED.

Dated: New York, New York
     February 5, 2009

GERARD E. LYNCH
United States District Judge

18